SMITH *v.* AMIS.

4-4571

Opinion delivered March 29, 1937.

Tom W. Campbell, for appellants.

O. W. Wiggins, S. S. Jefferies and Fred A. Donham, for appellees.

GRIFFIN SMITH, C. J. On April 17, 1936, the Pulaski chancery court gave judgment for $1,556.93 in favor of H. W. Finkbeiner, trustee. Certain furniture was impressed with a lien to secure payment of the obligation.

J. M. Wells and others were defendants in suits, wherein mortgages on the real property of the Violet Apartments were foreclosed in 1934. The furniture involved in controversy was a part of the equipment of the apartments. Marjorie Smith and Violet Hayes, daughters of Wells, have appealed on the grounds (1) that Finkbeiner's cause of action was *res adjudicata;* (2) that there is no competent evidence to support the chancellor's findings; (3) that Finkbeiner had abandoned an assignment of rents upon which his lien was predicated, and (4) that appellants were innocent purchasers without notice.

On December 30, 1933, Mary E. B. Amis and others filed suit against J. M. Wells and necessary parties on an indebtedness secured by mortgage or deed in trust on real property known as the Violet Apartments. Other obligations in favor of materialmen had been incurred by Wells. These were evidenced by note payable to Finkbeiner as trustee, secured by second mortgage. In the Amis suit to foreclose the first mortgage, Finkbeiner was a defendant. He filed answer, and in an intervention asked that a lien be declared on the furniture for the reason that rents assigned to him under a written pledge had been used by Wells to make payments on the purchase price. He also sought judgment on the note, and foreclosure of the second mortgage.

Marjorie Smith, one of the appellants herein, filed an intervention in the foreclosure suits, alleging ownership of the furniture under a bill of sale from her father, executed in 1932. On October 11, 1934, judgments were given in favor of those entitled to participation under the first and second mortgages on the real property. Equities amounting to $550 and interest were established in favor of Marjorie Smith, who was found to be mortgagee, and not owner, of the furniture. A lien was declared for this, and for the additional sum of $630 payable to the Haverty Furniture Company on a sales contract.

Upon a showing that the defendant Wells was insolvent, Kenneth Lane had been appointed receiver, and from February 3, 1934, rents on the apartments were collected by him. The decree of October 11, 1934, directed Lane to pay the claims of Marjorie Smith and Haverty Furniture Company. As to the item of $550 it is conceded that this was paid by the receiver, and the Haverty claim was discharged. The same decree gave judgment of $5,403.11 to H. W. Finkbeiner, trustee, on his answer and intervention, and fixed a lien on the real property by virtue of the deed of trust referred to *supra*. There is this recital: "The court doth retain control of this cause of action for such further orders as may be proper to enforce the rights of the parties hereto adjudged and the rights of such as may hereafter become parties to this action by proper proceedings * * *. And to the findings and decision of the court holding that the said bill of sale of the intervener, Mrs. Marjorie Smith, has only the effect of a mortgage and in refusing to hold that said bill of sale has the effect of vesting absolute title to the property therein described in her, said intervener, Mrs. Marjorie Smith, and the defendants, J. M. Wells and Gertrude Wells, and intervener, H. W. Finkbeiner, duly save their exceptions."

None of the parties who excepted to this decree appealed, and on November 13, 1935, Marjorie Smith and Violet Hayes brought an action in replevin in the Pulaski chancery court, naming as defendants those who were parties to the chancery proceedings. Over objections of the plaintiffs, this suit in replevin was transferred to

chancery, and there consolidated with the foreclosure cases. It alleged that Marjorie Smith and Violet Hayes were owners of the furniture, and were entitled to its possession. After the cause had been transferred to chancery, Finkbeiner filed an intervention, motion to consolidate, and answer, setting out his claim against the furniture.

In the decree of April 17, 1936, the chancery court found that as to the Finkbeiner claim, J. M. Wells and his wife, Gertrude Wells, had on August 15, 1930, executed and delivered to Finkbeiner as trustee the note sued on, together with a written assignment of rents arising from the Violet Apartments; that they had collected $2,075 of the assigned rents and used such in payment on furniture; that the reasonable rental value of the furniture was equal to 25 per cent. of the total received, or $518.31; that Finkbeiner was entitled to the difference of $1,556.93, but that plaintiffs, Marjorie Smith and Violet Hayes, were entitled to a lien to the extent of $1,000 by virtue of a bill of sale executed in their favor by J. M. Wells, dated June 18, 1935, subordinate to the Finkbeiner lien of $1,556.93. This appeal is from the action of the court in refusing to recognize the bill of sale as a valid transfer of an unencumbered title to the furniture.

If Finkbeiner's cause of action was *res adjudicata*, there was no title adverse to appellants, and they should prevail. In urging validity of the bill of sale, appellants direct attention to the mortgage and the assignment in favor of Finkbeiner, which bear the same date, and which were before the court with Finkbeiner's answer and intervention on October 11, 1934, at the time judgment was given on his note and mortgage. At the same time, judgment was given in favor of Marjorie Smith for $550, with a lien on the furniture. It is contended that the court's failure at that time to find for Finkbeiner on the assignment of rents was a denial of his claim, and constituted a final judgment from which he could have appealed; and, having failed to appeal, such right had ceased at the time appellants sought to replevy the furniture.

The correct rule is that "if the judgment or decree in form or effect dismisses the parties from the court, discharges them from the action, or concludes their rights in respect to the subject-matter in controversy in the case, an appeal will lie." *Campbell* v. *Sneed*, 5 Ark. 398. "A judgment, to be final, must dismiss the parties from the court, discharge them from the action, or conclude their rights to the subject-matter in controversy." *State Bank* v. *Bates*, 10 Ark. 633. "A final decree is that which concludes their rights to the subject-matter in controversy." *Bank of State* v. *Bates*, 10 Ark. 633. "A final decree is that which finally disposes of the whole question so that nothing further is left to adjudicate upon." *Tucker* v. *Yell*, 25 Ark. 420, quoting from Bouvier. In *Tucker* v. *Yell* it was said: "In peculiar cases, the court may decree as to certain defendants or property, while all the equities as to other defendants and property are reserved for further consideration; and yet this decree, as to certain defendants or property, may be final. If, in the course of the proceedings, final decrees vital to the interests of any of the litigants are made, an appeal may be had."

Judgment on the note and the decree of foreclosure were final as to Finkbeiner's rights under the mortgage. The assignment of rents, evidenced by a separate document, was an issue raised by the first intervention. The intervention was not dismissed, and there was a finding against Marjorie Smith on the question of ownership of the furniture, she being adjudged a mortgagee only. Therefore, there was no adjudication against Finkbeiner's claims under the assignment unless it can be said that silence by the court is to be construed as a denial of the claim. Subdivision "c" of § 95, 4 C. J. S., is a discussion of the law of implied adjudication. "A judgment or decree," says the text, "may be final and appealable as disposing of all the issues by reason of an implied adjudication, and it has been held that where two causes of action are stated in the pleadings and put in issue at the trial, and the judgment awards a recovery upon one, but is silent as to the other, such judgment is *prima facie* an adjudication that plaintiff was not entitled

to recover upon the other cause. This rule applies to disposition of the issue raised by a cross-bill, cross-complaint, counterclaim, or plea in reconvention.''

While this rule is sound, its application would depend upon circumstances and facts attending a particular case, and if it should reasonably appear that the parties, themselves, and the court, did not consider the issues concluded, the rule should not be invoked. In the instant case Finkbeiner's position was antagonistic to that of Marjorie Smith, and her interests were disposed of without a specific finding against Finkbeiner under his assignment. It is inferable that Wells was co-operating with his daughter in substantiation of her claim of ownership under the first bill of sale, although the testimony is not abstracted. There is nothing to suggest that the court, after finding that Marjorie Smith was not an owner, intended to hold against Finkbeiner. Nor can it be said that failure to make a finding had the effect of an adverse ruling. The very purpose of the intervention was to present Finkbeiner's claims under the assignment, and the intervention was not dismissed. It follows that appellants' plea of *res adjudicata* was properly rejected.

■ Under the second assignment, it is contended that there is no competent evidence to support the decree. We have examined the abstract and testimony in the record, and on this point the chancellor is sustained.

■ No substantial proof was introduced to show that Finkbeiner abandoned the assignment, other than testimony of Wells, who said that on one occasion Finkbeiner visited the apartments, and after looking over the property remarked, ''I don't see anything here for anybody; I don't see anything to be got out of this thing.'' The statement cannot be construed as an abandonment, nor did his prior or subsequent conduct evidence such an intent.

■ Appellants were not innocent purchasers of the furniture under the bill of sale executed in 1935. At that time Marjorie Smith had secured a lien under a previous bill of sale, and the judgment had been paid. She is charged with knowledge of the record. The court

retained control of the actions, and the receiver had not been discharged. The appellant, Violet Hayes, became interested because of the pressing necessities of her mother, who was ill, and because of the unfortunate financial condition of her father. It is admitted that each appellant advanced funds, but a proper construction to place upon the evidence is that the appellants desired to be of service to their parents. Therefore, their motives were far more praiseworthy than would have been the case had they responded to a mere business opportunity to acquire property. The chancellor was not in error when he found against the contention that they were innocent purchasers without notice.

Affirmed.